IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| CRAIG KROMREY and ZAHER MURRAY<br>*on behalf of themselves*<br>*and all similarly situated individuals*, | :<br>:<br>: | |
| | : | Civil Action No. 3:24-cv-575 |
| Plaintiffs, | :<br>: | |
| | : | |
| v. | :<br>: | |
| CAPITAL ONE, N.A., and EXPERIAN<br>INFORMATION SOLUTIONS, INC. | :<br>:<br>: | |
| | :<br>: | |
| Defendants. | : | |
| _____ | : | |

## CLASS ACTION COMPLAINT

Plaintiffs Craig Kromrey and Zaher Murray, by Counsel, bring this Class Action Complaint against Defendants Capital One, N.A. ("Capital One") and Experian Information Solutions, Inc., ("Experian") on behalf of themselves and the classes as set forth below.

## INTRODUCTION

1. This is a class action for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, against (i) Capital One, a national bank, which falsely reports to consumer reporting agencies that living consumers are deceased; and (ii) Experian, a consumer reporting agency, which uncritically parrots that false information.

2. Capital One routinely reports information about its customers and accountholders to each of the so-called "Big Three" national credit reporting agencies (the "NCRAs" or the "Big Three"), including Experian. In the vernacular of the Fair Credit Reporting Act, Capital One is a "furnisher" of credit information to the NCRAs.  *See* 15 U.S.C. § 1681a(p)(2).

1

3. After receiving the information furnished to them by Capital One, Experian and the other NCRAs (*i.e.*, TransUnion and Equifax), then regularly proceed to (i) sell the information to prospective creditors and others, including landlords and employers; and (ii) use the information to calculate consumers' credit scores.

4. Accurate credit scores and credit reports are crucial for consumers' access to credit; inaccurate credit data about a consumer can severely limit his or her ability to access credit cards, auto loans, mortgages and other important financial resources.

5. Capital One routinely furnishes inaccurate information to consumer reporting agencies ("CRAs"), including the Big Three. Specifically, it routinely and systematically informs CRAs that consumers are deceased when they are in fact alive and well.

6. Experian routinely reports consumers as deceased based upon information that it receives from Capital One, when it can and does know better.

7. Experian also routinely fails to properly handle disputes that it receives from consumers regarding its erroneous deceased reporting, allowing the inaccurate information to reappear later.

8. Incorrect data about whether someone is deceased is one of the most damaging pieces of misinformation that can appear on a credit report. Being reported as dead is often a complete bar to obtaining credit of any kind.

9. Despite having often received formal disputes from consumers, Capital One has persisted in erroneously reporting people as deceased when they are not. This conduct violates Capital One's obligations as a furnisher under the FCRA—specifically, 15 U.S.C. § 1681s-2(b).

10. Capital One's erroneous reporting of Plaintiffs as deceased also violates its duties under Virginia contract law—specifically, the duty of good faith and fair dealing that is implicit

in its account agreements with Plaintiffs and Class Members. These agreements authorize Capital One to report information to CRAs; implicit in that agreement is an obligation that it will do so in a reasonable, responsible and accurate manner. Reporting living consumers as deceased is patently inconsistent with that obligation.

11. Defendant Experian fails to maintain reasonable procedures with respect to reporting consumers as deceased, in violation of 15 U.S.C. § 1681e(b), and it fails to prevent deceased information from reappearing on consumers' reports after it has been taken off, in violation of 15 U.S.C. § 1681i.

12. Plaintiffs therefore bring this action for breach of the duty of good faith and fair dealing and for violation of the FCRA on behalf of four classes.

13. Plaintiffs seek actual and/or statutory and punitive damages, costs and attorneys' fees for Plaintiffs and the putative class members for Defendants' violations of the FCRA.

14. Plaintiffs seek damages (including nominal damages), injunctive and declaratory relief, costs and attorneys' fees for Plaintiffs and the putative class members for Defendant Capital One's violations of the duty of good faith and fair dealing.

## **THE PARTIES**

15. Plaintiff Craig Kromrey is a natural person and citizen of Minnesota. Mr. Kromrey is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Plaintiff Zaher Murray is a natural person and citizen of Michigan. Mr. Murray is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant Capital One, N.A., ("Capital One") is a national bank with its headquarters and its principal place of business in this District, with a significant physical presence in this Division. Further, a significant amount of Capital One's FCRA-compliance and dispute-

response work takes place in this Division. Capital One is a furnisher of credit information to consumer reporting agencies, as discussed by 15 U.S.C. § 1681a(p)(2), and it is therefore subject to the provisions of 15 U.S.C. § 1681s-2.

18. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign limited liability company authorized to do business in this state, including in this District. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any appropriate court of competent jurisdiction. Jurisdiction over the state law claims is proper under 28 U.S.C. § 1367 and appropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5,000,000 and minimal diversity exists among Defendants and the members of the Class.

20. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant Capital One has a significant presence in this District and Division.

## FACTS

### Plaintiff Kromrey's Experience

21. In May 2020, Plaintiff received a letter from Capital One addressed to the "estate of CRAIG KROMREY," offering "condolences for the passing of CRAIG KROMREY."

Plaintiff, however, was not and has not ever been deceased. Plaintiff does not know what prompted Capital One to send this letter, or to believe he was deceased.

22. In late 2020, Plaintiff attempted to purchase real estate, but he was unable to do so because he was listed as deceased on his credit report. Further, in November 2021, Plaintiff was denied a personal credit card by non-party Synovus Bank. The reason given by the bank for his denial was "DECEASED APPLICANT AS LISTED AT CONSUMER REPORTING AGENCY," and the agency listed as providing this information was Experian. Experian received the misinformation that Plaintiff was deceased from Capital One.

23. Following these experiences, Plaintiff sent disputes in November 2021 directly to Experian, Equifax and TransUnion, clearly indicating that he was not deceased.

24. Experian, Equifax and TransUnion forwarded Plaintiff's disputes to Capital One, the original source of the deceased reporting, and for a time Plaintiff was not reported as deceased.

25. In 2023, however, the issue resurfaced. Plaintiff was twice denied credit based after Experian reported that he was deceased, based again upon information received from Capital One.

26. Specifically, in August 2023, Plaintiff was once again denied a personal credit card by non-party Synovus Bank. Once again, the reason given by the bank for his denial was "DECEASED APPLICANT AS LISTED AT CONSUMER REPORTING AGENCY," and the agency listed as providing this information was again Experian, which had received the misinformation that Plaintiff was deceased from Capital One.

27. In April 2023, Plaintiff, hoping to do some renovation and updates to his residence, sought a home equity line of credit (HELOC).

28. Specifically, Plaintiff was denied credit by Silver Hills Funding, LLC in April 2023 for the HELOC. Silver Hills Funding purchased what is known as tri-merge report regarding

Plaintiff from non-party Corelogic Credco—*i.e.,* a report that reflected data provided from each of the Big Three NCRAs (Experian, Equifax and TransUnion). On this report, Experian was the only one of the NCRAs that reported Plaintiff as deceased.

29. Capital One's and Experian's misconduct has harmed Plaintiff financially, in the form of lost and diminished credit opportunities, harm to Plaintiff's finances, lost time and frustration responding to Defendants' misreporting, and anxiety and stress related to the situation.

**Plaintiff Murray's Experience**

30. In early 2023, Plaintiff Murray and his wife attempted to obtain a HELOC. In the process of applying for that loan, the lender obtained a credit report regarding Plaintiff Murray, upon which he was reported as deceased.

31. The information that Plaintiff Murray was deceased was reported to Plaintiff's prospective lender by Experian. Capital One, in turn, had furnished that erroneous information to Experian. Plaintiff was reported not only as deceased, but as having no credit score.

32. Because of this erroneous reporting, the loan had to be processed with only his wife's score, and Plaintiff Murray and his wife received a substantially smaller line of credit than they expected to receive.

33. Several days later, Plaintiff Murray called both Experian and Capital One to inform them that he was alive. Experian, pursuant to its standard policies and procedures, forwarded information about Plaintiff's dispute to Capital One for investigation.

34. For a short period of time, Plaintiff Murray's was no longer reported as deceased by Experian. However, by June 2023, only a few months later, Experian's credit file was again reflecting that, based on information received from Capital One, Plaintiff Murray was deceased.

35.     Defendants' misreporting and failure to properly respond to Plaintiff's dispute has harmed Plaintiff financially, in the form of lost and diminished credit opportunities, lost time and frustration responding to Defendants' misreporting – both in the form of disputes to CRAs and in the form of additional time and effort with lenders to obtain credit – and anxiety and stress related to the misreporting.

### Defendant Capital One's Practices

36.     Capital One furnishes credit information regarding consumers who, it claims, have or had credit accounts with it, including but not limited to credit cards, mortgages and other lines of credit.

37.     Any consumer who has or had credit accounts with Capital One entered into a contract with Capital One. All of Capital One's standardized and form consumer credit agreements contain the same standard term regarding credit reporting:

> **Credit Reports.** We may report information about your Account to credit bureaus and others. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report. Information we provide may appear on your and the Authorized Users' credit reports. If you believe that we have reported inaccurate information about your Account to a credit bureau or other consumer reporting agency, notify us in writing at PO Box 30281, Salt Lake City, UT 84130-0281. When you write, tell us the specific information that you believe is incorrect and why you believe it is incorrect. We may obtain and use credit, income and other information about you from credit bureaus and others as the law allows.

38.     Capital One's standard agreement also states: "We make decisions to grant credit and issue you a Card from our offices in Virginia. This Agreement is governed by applicable federal law and by Virginia law."

39.     Every contract governed by Virginia law contains an implicit duty of good faith and fair dealing.

40. Capital One has enacted standard policies and procedures that result in it furnishing incorrect information to furnishers regarding whether consumers are dead. These procedures are flawed, reckless, and unreasonable.

41. Capital One is on notice that its procedures for determining whether consumers are deceased are flawed because it has received consumer complaints about its misreporting directly, because it has received notices of dispute from the credit bureaus, and because the issue has been reported in the media.[1]

42. Despite its awareness of this issue, Capital One persists in erroneously dubbing its customers as deceased.

43. The conduct described above is incompatible with Capital One's duty under Virginia law to use good faith in executing its contractual right to provide information to CRAs.

44. This conduct is also incompatible with Capital One's duties as a furnisher of information under the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681s-2(a).

45. Adding insult to injury, Capital One also fails to properly correct its misreporting when consumers file disputes. As Plaintiffs' experience make clear, it persists in reporting individuals as deceased, even after the individual disputes and makes clear that they are not, in fact, deceased.

46. This conduct violates the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681s-2(b).

**Capital One's FCRA Violations Were Willful**

47. The Supreme Court has held that willfulness under the FCRA encompasses not only a knowing violation but also a violation committed in reckless disregard of statutory obligations. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

---

[1] *See, e.g.* https://www.clickorlando.com/news/local/2021/11/08/i-am-not-dead-orange-county-man-mistakenly-reported-deceased-to-credit-bureau/, accessed August 13, 2024.

48. Recklessness is measured by an objective standard: conduct that creates an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68.

49. As noted above, Capital One had actual notice that it was routinely reporting living consumers as deceased.

50. Further, when it receives disputes from a consumer about deceased reporting, Capital One receives actual notice that that particular consumer is alive. To fail to correct its reporting, or to repeat its error shortly after correcting it, is both knowing and reckless.

51. Accordingly, Capital One's violations of the FCRA are willful and it is liable for statutory and punitive damages under 15 U.S.C. § 1681n.

## Defendant Experian's Practices

52. Experian knew or should have known that the deceased information it was receiving from Capital One was unreliable and frequently in error.

53. Experian knew or should have known that Capital One reported consumers deceased at a higher rate than other furnishers.

54. Experian knew or should have known that consumers reported deceased by Capital One disputed that reporting more often than those reported deceased by other furnishers, and that those disputes were more often successful.

55. Experian knew or should have known that Capital One often reported consumers deceased when other furnishers did not.

56. Experian knew or should have known that Capital One often reported consumers deceased when other furnishers were reporting information that was inconsistent with the

consumer being deceased, such as that the consumer was opening new lines of credit or making payments on existing lines of credit.

57. Despite this, Experian persisted in parroting Capital One's deceased reporting uncritically. This reporting was in violation of 15 U.S.C. § 1681e(b), which requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of its consumer reporting.

58. Adding insult to injury, when consumers did successfully report Capital One's deceased reporting, Experian thereafter permitted Capital One to reinsert that erroneous information into consumers' file, in further violation of the FCRA, 15 U.S.C. § 1681i.

59. Experian's conduct was in knowing or reckless disregard of its statutory obligations. Experian had all the information it needed in its possession to identify and correct this issue, but it failed to do so.

60. Accordingly, Experian's violations of the FCRA are willful, and it is liable for statutory and punitive damages under 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

61. The Classes: Plaintiffs bring their claims on behalf of themselves individually, and, pursuant to Fed. R. Civ. P. 23, on behalf of the Classes, defined as follows:

> **The Disputes Class**: All natural persons who, within the five years prior to the filing of this Complaint: (1) filed a dispute with Equifax, Experian, TransUnion or any other consumer reporting agency regarding Capital One reporting them as deceased; (2) where Capital One subsequently reported the individual as deceased; and (3) where the consumer was not deceased at the time of Capital One's reporting.

> **The Good Faith and Fair Dealing Class**: All natural persons whom, within the four years prior to the filing of this Complaint: (1) Capital One reported as deceased to Equifax, Experian, TransUnion or any other consumer reporting agency and; (2) who were not deceased at the time of Capital One's reporting.

**The Reasonable Procedures Class**: All natural persons whom, within the five years prior to the filing of this Complaint: (1) Experian reported as deceased based upon information furnished by Capital One; (2) where the consumer was not deceased at the time of Experian's reporting.

**The Reinsertion Class**: All natural persons who, within the five years prior to the filing of this Complaint: (1) filed a dispute with Experian regarding Capital One reporting them as deceased; (2) where Capital One subsequently reported the individual as deceased; (3) where Experian subsequently reported the individual as deceased; and (4) where the consumer was not deceased at the time of Experian's reporting.

62. The Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(3).

63. <u>Numerosity</u>: The Classes are so numerous that joinder of the claims of all class members is impractical. Membership in the Classes can be ascertained though Defendants' records and/or public records.

64. <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendants systematically and erroneously report consumers as deceased; (b) whether Defendants systematically ignored consumer disputes regarding deceased reporting; (c) whether this conduct violated the FCRA; and (d) as to Defendant Capital One, whether this conduct violated the duty of good faith and fair dealing.

65. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of each member of each of the Classes, and all claims are based on the same facts and legal theories. The claims challenge Defendants' consumer-reporting procedures, and they do not depend on any individualized facts.

66. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the class members' interests. Plaintiffs have retained counsel who are experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiffs nor their counsel have any

interests that might cause them not to vigorously pursue this action. Plaintiffs are aware of his responsibilities to the Classes, and they have accepted these responsibilities.

67. Certification of the Classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate because:

    a. As alleged above, the questions of law or fact that are common to the members of the Classes predominate over any questions that may affect any individual class member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues that may exist. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.

    b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment in this respect, as they involve many consumers who are unable to afford and bring such claims individually. Further, most consumers affected by Defendants' conduct are likely unaware of their rights under the law. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class-wide and should be resolved at one time.

68. Certification of the Good Faith and Fair Dealing Class is also appropriate under Fed. R. Civ. P. 23(b)(2) for injunctive relief. Capital One has acted or refused to act on grounds that apply generally to the Good Faith and Fair Dealing Class so that final injunctive relief or corresponding declarator relief is appropriate.

## COUNT ONE
## 15 U.S.C. § 1681s-2(b)
## Failure to Comply with Dispute Procedures
(On behalf of Plaintiffs, individually, and on behalf of the Disputes Class against Defendant Capital One)

69. Plaintiffs restate each of the preceding allegations.

70. Under the FCRA, when a furnisher of credit information receives notice of a consumer dispute, it must:

**(A)** conduct an investigation with respect to the disputed information;

**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

  **(i)** modify that item of information
  **(ii)** delete that item of information; or
  **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

71. Capital One has violated this provision with respect to Plaintiffs and all members of the Disputes Class by failing to conduct an appropriate investigation and/or failing to take appropriate action after the inaccuracy was found.

72. Specifically, Capital One regularly and systematically fails to take appropriate action after a dispute pursuit to 1681s-2(b)(E)—specifically, it fails to ensure that the inaccurate

13

deceased information is modified deleted and/or permanently blocked from being reported to third parties.

73. Based in part on the volume of disputes that it received from Plaintiffs and from members of the Disputes Class, Capital One should have recognized that it had a systematic issue with erroneously reporting consumers as deceased, and it should have taken steps to proactively ensure that the issue would not reoccur. Capital One failed to do so.

74. Capital One's violations of 15 U.S.C. § 1681s-2(b) were willful, rendering Capital One liable under 15 U.S.C. § 1681n. In the alternative, its conduct was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

75. Plaintiffs and each member of the Disputes Class suffered an injury in fact as a result of Capital One's violations of 15 U.S.C. § 1681s-2(b), as alleged herein.

76. Under 15 U.S.C. §§ 1681o and 1681n, Plaintiffs and the members of the Disputes Class are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Capital One.

## COUNT TWO
**Breach of Contract**
**(On behalf of Plaintiffs, individually, and on behalf of the Good Faith and Fair Dealing Class against Defendant Capital One)**

77. Plaintiffs restate each of the preceding allegations.

78. Plaintiffs and members of the Good Faith and Fair Dealing Class were at some point accountholders with Capital One, and their relationships with Capital One were governed by contractual terms and conditions.

79. Those contractual terms, like those quoted in paragraph 37, *supra*, authorized Capital One to furnish information about class members to consumer reporting agencies, including Experian.

80. Like all contractual rights and duties in the state of Virginia, however, Capital One's contractual authorization to furnish information to consumer reporting agencies was subject to the duty of good faith and fair dealing.

81. Capital One's choice to furnish information to consumer reporting agencies indicating that Plaintiffs and the members of the Good Faith and Fair Dealing Class were deceased (when they were not) was a violation of that duty. Capital One knew or should have known that the information it was furnishing was false and that its reporting would therefore be damaging to Plaintiffs and members of the Good Faith and Fair Dealing Class. Capital One's reporting was arbitrary, unreasonable, in bad faith, and inconsistent with the justified expectations of Plaintiffs and the members of the Good Faith and Fair Dealing Class .

82. Moreover, Capital One's reporting did, in fact, cause damage to Plaintiffs and the Good Faith and Fair Dealing Class—when a person is reported as deceased, he or she no longer has a credit score and cannot access credit.

83. Plaintiffs and the members of the Good Faith and Fair Dealing Class are entitled to all available relief including damages and/or nominal damages, and are also entitled to obtain injunctive and declaratory relief.

**COUNT THREE**
**15 U.S.C. § 1681e(b)**
**Failure to Maintain Reasonable Procedures**
**(On behalf of Plaintiffs, individually, and on behalf of the Reasonable Procedures Class against Defendant Experian)**

84. Plaintiffs restates each of the preceding allegations.

85. As described above, Experian regularly reports consumers as deceased based upon information that it receives from Capital One, even though it has reason to know that this information is incorrect.

86. Experian regularly reports deceased information from Capital One in the absence of confirmatory data from other furnishers, and even in the face of contradictory data from other furnishers.

87. Experian knew or should have known that Capital One disproportionally reports consumers as deceased, as compared to other furnishers.

88. Experian knew or should have known that deceased information from Capital One was disproportionally disputed by consumers and that those disputes were disproportionally successful.

89. Yet despite all of the above, Experian persisted in reporting deceased information from Capital One. This reporting was not reasonable.

90. Experian, therefore, violated the FCRA, 15 U.S.C. § 1681e(b), as to Plaintiffs and each member of the Reasonable Procedures Class by misreporting them as dead based solely upon unreliable information that it received from Capital One.

91. As described above, Experian had no procedures in place that were designed to prevent these violations, which are apparent from even a cursory review of the records on which Experian was relying.

92. Plaintiffs and each member of the Reasonable Procedures Class suffered real and actual harm and injury.

93. Moreover, Experian's conduct was willful, rendering it liable for statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, its conduct was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

94. As a result of these FCRA violations, Experian is liable to Plaintiffs and to each member of the Reasonable Procedures Class for actual and/or statutory damages of between $100

and $1,000, in addition to punitive damages, attorneys' fees, and costs under 15 U.S.C. §§ 1681o, n.

## COUNT FOUR
### 15 U.S.C. § 1681i
**(On behalf of Plaintiffs, individually, and on behalf of the Reinsertion Class, against Defendant Experian)**

95. Plaintiffs restate each of the preceding allegations.

96. The FCRA, 15 U.S.C. § 1681i(5)(B)(i), requires that "[i]f any information is deleted from a consumer's file pursuant to [a consumer dispute] the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate."

97. After deleting the deceased information from Capital One from the files of Plaintiffs and the files of the members of the Reinsertion Class, Experian failed to comply with this requirement before reinserting the erroneous information.

98. After reinserting the erroneous deceased information into the files of Plaintiffs and the Reinsertion Class, Experian also failed to comply with § 1681i(5)(B)(ii) of the FCRA, which provides that after reinserting previously disputed information, "the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days."

99. Experian also failed to comply with § 1681i(5)(B)(iii) of the FCRA, which sets forth three specific categories of information that must be provided to the consumer as part of or in addition to the notice listed in subsection (ii).

100. As a result of Experian's conduct, Plaintiffs and the members of the Reinsertion Class each suffered concrete and particularized harm, including without limitation: credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

101. Experian's conduct was willful, rendering it liable for statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, its conduct was negligent, rendering Experian liable under 15 U.S.C. § 1681o.

102. As a result of these FCRA violations, Experian is liable to Plaintiffs and to each member of the Reinsertion Class for actual and/or statutory damages of between $100 and $1,000, in addition to punitive damages, attorneys' fees, and costs under 15 U.S.C. §§ 1681n, o.

**WHEREFORE**, Plaintiff, on behalf of himself and the putative class members, seek class certification and for statutory damages, actual damages, punitive damages, nominal or exemplary damages, injunctive and declaratory relief, attorneys' fees, and costs as set forth above, for prejudgment and post-judgment interest at the legal rate, and any other relief the Court finds appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,
**CRAIG KROMREY and ZAHER MURRAY**

By: __/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email:  kkelly@kellyguzzo.com
Email:  aguzzo@kellyguzzo.com
Email:  casey@kellyguzzo.com

E. Michelle Drake*
Joseph C. Hashmall*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999

        F. 612.584.4470
        emdrake@bm.net
        jhashmall@bm.net
        **pro hac vice forthcoming*

*Counsel for Plaintiff*